FARROW v. AMERICAN AGRICULTURAL CHEMICAL CO.

(District Court, S. D. New York. February 16, 1912.)

SHIPPING (§ 177*)—CONSTRUCTION OF CHARTER PARTY—PRIORITY IN DISCHARGING.

    Two schooners of different owners, the Howard and the Benedict, were chartered by respondent, each to carry a cargo of fertilizer from Carteret, N. J., to Wilmington, N. C. Each charter party contained a provision that the vessel should load and discharge in turn with other vessels chartered by respondent. The Howard was chartered first, loaded first, sailed first, and arrived first at the mouth of Cape Fear river. A tug came down the next morning and was hailed, but passed out to sea and returned with the Benedict. She, however, took the Howard in the lead and left her at respondent's pier, dropping the Benedict a mile down stream. The Benedict's master went ashore and telephoned her arrival to respondent's agent some 15 minutes before notice was given by the Howard, and the agent compelled the latter to move from the pier and wait the discharge of the Benedict. *Held*, that the Howard was entitled to discharge first, and that respondent was liable in damages for the time she was required to wait, regardless of the speed with which she was discharged after she reached the pier.

    [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 576–582, 584; Dec. Dig. § 177.*]

In Admiralty. Suit by William E. Farrow, as master of the schooner Florence Howard, against the American Agricultural Chemical Company. Decree for libelant.

Arthur Lovell, for libelant.

Gifford, Hobbs & Beard (Anson Beard and Mason Wheeler, of counsel), for respondent.

HOLT, District Judge. This action is brought by the master of the schooner Florence Howard to recover for eight days' detention at Wilmington, N. C., in February and March, 1911. The schooner was chartered by the respondent on February 3, 1911, to carry a cargo of about 1,300 tons of fertilizer from Carteret, N. J., to Wilmington. The charter provided:

    "It is agreed that the lay days for loading and discharging shall be as follows: Commencing from the time the captain reports himself ready to receive or discharge cargo. Customary dispatch for loading and discharging. Vessel to load and discharge in turn with other vessels chartered by same company."

The schooner Frank W. Benedict was chartered by the respondent on February 11, 1911, to carry a similar cargo, of about 750 tons, between the same ports, and loaded at Carteret after the Howard finished loading. The Benedict's charter contained the clause:

    "Vessel to discharge in turn with other vessels chartered by same company."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The Howard arrived at Southport, at the mouth of the Cape Fear river, about 17 miles below Wilmington, on February 22d, about 5 p. m., and anchored, waiting for a towboat to tow her up to Wilmington. The Benedict was not anywhere in sight then. At 10 o'clock the next morning, the tug Sea King came down the river, going out to sea. The captain of the Howard hailed the captain of the tug, who was also the harbor master of the port of Wilmington, and asked him to tow the schooner up the river. He waved his hand in reply and proceeded to sea. He came back at 12:30 with the schooner Frank Benedict in tow, and took the schooner Howard in tow also, putting the Howard next the tug and the Benedict astern of the Howard. The captain of the Howard testifies that he asked the captain of the Sea King why he left him and went and got another vessel, as she was bound for the same berth the Howard was, and the captain of the Sea King replied that he was going to put the Howard into the berth first. They towed up the river and reached Wilmington about 5 o'clock p. m. The Sea King dropped the Benedict about a mile below the respondent's dock, where she anchored, and took the Howard on up to the dock. When they reached the dock the berth was empty; but the captain of the Sea King, after making the Howard fast by one line to the dock, sent to the office, about 400 feet away, for the respondent's agent there. The respondent's agent came down and said that the Benedict had just reported to him by telephone, 15 minutes before, and ordered the Howard to leave the berth for the Benedict. The captain of the Howard objected, and said that his vessel was there ahead of the Benedict, ready to discharge; but the captain of the Sea King ordered the Howard's line cast off and removed her to a berth above, where she lay, waiting for the discharging berth, until March 4th, when she was finally put into the berth, the Benedict having finished unloading and left Wilmington. The Howard finished unloading on the evening of March 10th.

I think that the Howard was entitled to be unloaded at Wilmington before the Benedict. The respondent was the charterer of both vessels. They were both consigned to the respondent's agents at Wilmington. The Howard was chartered first, loaded first, sailed first, and reached the mouth of the river first. The harbor master on the tug that took the two vessels up the river recognized the right of the Howard to go up first by putting the Benedict behind the Howard at Southport. The Benedict was cast off about a mile below the dock, and the Howard taken up to the dock, and I think, therefore, that under the clause in the charter providing that the vessels should be discharged in turn the Howard was entitled to be first discharged. The fact that the captain of the Benedict slipped ashore in his launch, went to the office of his agents, and telephoned to the respondent's agent, especially in a small port like Wilmington, while the Howard was being fastened to the dock, seems to me immaterial. It would seem that the agents of the charterer, for some reason, preferred to have the Benedict unloaded first, although she had not arrived first.

I think that the defense that according to the custom of the port of Wilmington the vessel that reported first, however the report was made, was entitled to be discharged first is untenable. In the first

place, the proof is not sufficient to establish that there was any such universal and generally understood custom. In the second place, if there was such a custom, it would not affect the specific provision of the charter party to the effect that the different vessels chartered by the respondent should be discharged in turn.

The point that the charter of the Howard provided that she should be discharged with "customary dispatch," that customary dispatch in the port of Wilmington was at the rate of 100 tons a day, and that, as she had over 1,300 tons aboard, no claim for demurrage could arise until the expiration of 13 days from her arrival, seems to me equally untenable. The claim is not strictly for demurrage It is for damages for not being permitted to discharge in her turn. The Howard was entitled to go first to the dock, and if she could be discharged more rapidly than 100 tons a day she was entitled to do so, and to have the benefit of the time saved.

My conclusion is that the libelant should have judgment as demanded in the libel.